**Murray ROSEN**

v.

**George S. HARRIS, Jr., et al.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1981.

Decided April 3, 1981.

Cope & Cope, Steven E. Cope, Portland (orally), for plaintiff.

Christopher A. Moen, Jr., South Portland (orally), Charles B. Rodway, Jr., Portland, for defendants.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Defendants George S. Harris, Robert Mottram and Lawrence P. Mahoney have

appealed from the judgment of the Superior Court (Cumberland County) granting plaintiff Murray Rosen a permanent injunction restraining defendants and their successors from

"interfering with, damaging, injuring, possessing or trespassing in any way upon the premises located in the basement of 492 Congress Street, Portland, Maine, . . . more commonly known as, and doing business as the Pickle Barrel Deli."

The judgment also divided certain fixtures and items of personal property between the plaintiff and defendant Harris who, it appears, were associated in the operation of a restaurant and delicatessen business, known as the "Pickle Barrel Deli."

The following are the facts shown of record. On May 1, 1979, defendant Harris entered into a lease for the basement premises at 492 Congress Street. The lease was for a term of three years, with an option to renew for two years, and provided for rental payments of $200.00 per month plus a variable utility surcharge. It also provided that it was not assignable without the consent of the lessor. The lease was signed by the defendant Harris and the lessor Bernard Chapman.

After renovation of the leasehold property, the deli opened for business sometime in July of 1979. From the beginning, the business had financial difficulties: checks for rent and supplies were frequently returned for insufficient funds, no payments were made toward the utility surcharge required by the lease agreement, and only infrequent payments were made on certain pieces of leased equipment. On November 23, 1979 defendant Harris assigned "all rights and privileges" under the lease to defendant Robert Mottram. Subsequently, a series of confrontations occurred in which defendants, or some of them, entered the deli premises and demanded that plaintiff recognize their right to possession and vacate the premises.

Because of these incidents plaintiff, on December 10, 1979, filed a complaint and a motion for an order temporarily restraining defendants from interfering with or trespassing on the deli premises. The complaint alleged that on or about September 1, 1979 defendant Harris, by his statements and conduct, manifested a clear intent to surrender the lease, as well as to disassociate himself from the business property. It further averred that following the alleged surrender of the lease, a tenancy-at-will was created between Mr. Chapman and plaintiff and that under such a tenancy, plaintiff was entitled to exclusive possession of the leasehold premises.

On December 10, 1979 the Superior Court issued a temporary restraining order against defendants. On December 13 the plaintiff filed an amended complaint and a motion for preliminary injunction and trial on the merits. The amended complaint directly raised the question of the nature and status of the business arrangement created by the plaintiff and defendant Harris. The original complaint asked only that the defendants be enjoined from "interfering with Plaintiff's sole and exclusive right to use and occupy the premises under his tenancy-at-will." The amended complaint contained a prayer for a

"declaratory judgment that plaintiff is the sole and exclusive tenant-at-will of said premises and that plaintiff is the sole and exclusive proprietor of said restaurant business operated at said premises."

By agreement of the parties, a trial consolidating the motion for preliminary injunction with the merits of issuance of a permanent injunction was held on December 13, 1979. Finding

"that the Plaintiff, Murray Rosen, is the sole and exclusive tenant at will of the premises hereinbefore described and that the Plaintiff is the sole and exclusive proprietor of the restaurant business operated at said premises under the name of the Pickle Barrel Deli",

the Superior Court issued a permanent injunction restraining defendants from interfering with the business or its premises. Moreover, having purportedly undertaken an equitable accounting "to afford the parties complete justice", the court divided the liabilities, personalty and fixtures of the

business between the plaintiff and defendant Harris. Defendants took a timely appeal to this Court.

We sustain the appeal, set aside the judgment and remand to the Superior Court for further proceedings.

Our view is that in their essence the issues raised in this case concentrate upon the creation and current status of a restaurant and delicatessen business venture. More particularly, we perceive the issues as focusing upon whether the parties other than the plaintiff Rosen had abandoned whatever business relationship had been established for the operation of the "deli" enterprise. As bearing on this point, we note that Mr. Chapman, the lessor of the real estate, was not joined as a party to the action. This suggests that the parties themselves conceived the action to be concerned not with whether landlord and tenant had made a new-tenancy arrangement but with the business relationship between the parties and what had happened to it. The lease, as such, was merely incidental to this foundational business relationship, as became even more apparent after plaintiff filed his amended complaint. Furthermore, the evidence presented at trial was directed to the question whether defendant Harris had abandoned the business venture; it touched only indirectly on Harris' relationship to the lease of the real estate.

Lastly, the injunctive relief requested by the plaintiff left no doubt that the court's equity jurisdiction was being invoked. Since the subject-matter of the adjustment of the rights and liabilities of partners and participants in joint ventures has long been recognized to fall within the jurisdiction of a court of equity, the plaintiff had a sound basis for invoking equity jurisdiction insofar as he may be taken to have been seeking an adjudication of the status of the business venture in which he was associated with defendant Harris (and perhaps others), an accounting and a distribution of the business assets.

Notwithstanding that the entire record thus reveals that the parties were basically seeking an adjudication of their rights and responsibilities under some type of business association or relationship that one of them was alleged to have abandoned, the presiding justice saw fit to dispose of the case by deciding the entirety of it on the basis of whether there had been a "surrender" of a lease and the establishment of a new tenancy arrangement. In the justice's own words:

"Although the parties have characterized the legal issue in this case as one of abandonment, the outcome of this case depends, in fact, upon whether there has been a surrender by the Defendants of their lease in contemplation of law."

In light of what we have already explained, we would view the justice's characterization of the core issues as erroneous.

Yet, it may well have been that the presiding justice felt compelled to adopt this approach as his only alternative to avoid a recurrence of disorderly confrontations and a multiplicity of actions by deciding the case before him even though the parties had failed to present evidence on the real issues involved: the creation, nature and abandonment of the business arrangement made by plaintiff Rosen and defendant Harris. We note that the record is devoid of evidence as to the existence, or terms, of any formal or informal agreement entered into by Harris and Rosen with regard to the "deli" venture. It contains little specific information about the nature or value of the capital contribution made by the parties to the business, and it presents no clear showing as to how Rosen and Harris shared the responsibilities of the business.

On the issue of the alleged termination of the business relationship, too, the record is almost as barren. It provides only scant information regarding the existence or contents of any direct communication between Rosen and Harris during the period in which any "abandonment" by Harris was alleged to have taken place. In addition, there is no evidence as to whether the identity or character of the business as it was presented to the public or its creditors underwent change after September 1, 1979, the date of the alleged abandonment.

Lastly, the record contains none of the detailed financial records that are a necessary basis for an accounting in connection with the dissolution and winding up of a business venture.

We think it clear, then, that what we confront is a situation in which, for some reason we cannot fathom, the parties failed to address in adequate manner the real issues of their controversy as formulated by the pleadings in the case. Thereby, the parties gave the presiding justice cause to overreach in his laudable effort to make the flimsy evidentiary framework the parties had provided him serve as the foundation for a decision that would terminate the dispute and prevent the continuance of business disruptions and the consequent persistence of litigation.

We conclude, therefore, that in fairness to the parties themselves as well as the presiding justice the case should be remanded to the Superior Court for further proceedings in which the really basic issues of this case, as explained by this opinion, may be adequately addressed by all concerned. To assure this result, on remand the parties shall have opportunity to present such additional evidence bearing on the issues as, guided by this opinion, they may see fit to offer or the presiding justice may seek to have them offer.

The entry shall be:

Appeal sustained; judgment set aside; case remanded to the Superior Court for further proceedings in accordance with the opinion herein.

No costs on appeal.

All concurring.